UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| RAUL QUINTANILLA, | § | |
| | § | |
| *Petitioner*, | § | |
| VS. | § | **CIVIL ACTION NO. L-08-32** |
| | § | **CRIMINAL CASE NO. L-04-1299-1** |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Respondent*. | § | |

<u>OPINION AND ORDER</u>

Pending before the Court is Petitioner Raul Quintanilla's, A/K/A "Santos Contreras" ("Quintanilla") Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.  [Dkt. No. 1].[1]  For the reasons stated herein, the Court **GRANTS** Quintanilla's request for an evidentiary hearing, but only for the limited purpose of determining whether he requested that his attorney file a notice of appeal.  All of Quintanilla's other claims are **DISMISSED with prejudice**.

I.      BACKGROUND AND PROCEDURE

A.      Background

On July 7, 2004, a federal grand jury in Laredo, Texas, indicted Quintanilla in criminal case number L-04-1299-1 of conspiring to import into the United States a quantity in excess of 1,000 kilograms of marihuana in violation of Title 21, United States Code, Sections 952(a), 960(b)(4) and Title 18 United States Code, Section 2.  [Cr. Dkt. No. 1].  Quintanilla decided to forego trial and entered a plea of guilty before United States Magistrate Judge Adriana Arce-

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.  "Dkt. No." will be used to refer to filings in case number 5:08-cv-32.  Unless otherwise noted, "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:04-cr-1299-1.  Citations to "Minute Entries" will be used to refer to entries made for criminal case number 5:04-cr-1299-1.

Flores on January 9, 2007 pursuant to a written plea agreement.  [Minute Entry of 1/09/07; Cr.

Dkt. No. 21].  The plea agreement included the following language:

> 10.  In exchange for the concessions made by the Government in the agreement, the Defendant expressly waives the right to contest and/or appeal, **either directly or collaterally**, his/her guilty plea, conviction, sentence, and/or detention by means of **ANY** post-conviction proceeding whatsoever.   **Such waiver expressly includes, and Defendant expressly agrees not to file, ANY DIRECT and/or COLLATERAL attacks on Defendant's guilty plea, conviction, sentence, and/or detention pursuant to any statute, law, procedure, or Constitutional provision whatsoever, including, without limitation, Title 18, U.S.C., § 3742 and Title 28, U.S.C. §§ 1651, 2241, 2255.**

> In waiving those rights, Defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.   Understanding this, Defendant agrees to waive the right to "collaterally attack" his/her conviction and/or sentence in any manner whatsoever, including Title 28, U.S.C. § 2255.  Defendant is also aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed and/or the manner in which such sentence was determined.  Understanding this, Defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined **on any grounds whatsoever, including, without limitation, those set forth in Title 18 U.S.C. § 3742.**   The defendant further waives any rights under Title 28, U.S.C. § 2241 to challenge, either directly or collaterally, the manner in which the sentence is imposed or determined by the District Court.

> In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreements, or (c) Defendant's plea is later withdrawn.  [ . . . ]

> 12.  The defendant represents to the Court that defendant is satisfied that his attorney has rendered effective assistance.   Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Agreement.

[Cr. Dkt. No. 22 ¶¶ 10, 12 (emphasis in original)].

At re-arraignment on January 9, 2007, the Magistrate Judge placed Quintanilla under oath

and advised him of the rights and implications surrounding a guilty plea, consistent with the

requirements of Federal Rule of Criminal Procedure 11.  *See* Fed. R. Crim. P. 11(b)(1).  The

Court focused part of its discussion on Quintanilla's waiver of his rights to appeal.  *See* Fed. R.

Crim. P. 11(b)(1)(N).  The Magistrate Judge asked Quintanilla whether he understood what she had explained to him, to which he answered "yes."  The Court found that Quintanilla had pleaded guilty knowingly and voluntarily, and accepted his plea.

At the sentencing hearing on April 24, 2007, the Court indicated to Quintanilla that under the statute he faced a possible minimum sentence of one-hundred twenty (120) months, and a maximum of life imprisonment.  When the Court asked both Quintanilla and his attorney whether they had reviewed the Presentence Investigation Report ("PSR"), they each answered "yes."  The Court then stated that Quintanilla qualified for a downward adjustment under the safety-valve provision which, along with his acceptance of responsibility, resulted in a sentencing range of sixty-three (63) to seventy-eight (78) months of imprisonment.  Indicating that it believed this to be a reasonable range in light of all the information in the PSR as well the factors that the Court is required to consider, the Court sentenced Quintanilla to a term of sixty-six months (66) in custody to be followed by a three-year term of supervised release.  [Minute Entry of 4/24/07].  The Court also indicated that because Quintanilla had waived his right to appeal, the judgment would become final.  Judgment was entered on April 26, 2007.  [Dkt. No. 33].

## B.    The Instant Petition

Quintanilla filed the instant motion on March 20, 2008, challenging his conviction on two grounds.  First, he claims that his Sixth Amendment rights were violated because his attorney Fausto Sosa rendered ineffective assistance of counsel.  [Dkt. No. 1 at 4].  He argues that "the performance of counsel for Petitioner fell below an objective standard of reasonableness during pretrial negotiation, sentence, and direct appeal," [Dkt. Nos. 1 at 4, 1-2 at 11-20], and that he suffered prejudice as a result.  [Dkt. Nos. 1 at 4, 1-2 at 21-30].  Quintanilla requests an

evidentiary hearing to allow him to prove his claim of ineffective assistance of counsel, averring that such a hearing is necessary and will be useful to the Court.  [Dkt. Nos. 1 at 4, 1-2 at 34-36]. Quintanilla points out that unless the motion and record as constituted conclusively show that relief is unavailable, an evidentiary hearing should be held "to decide all of these unresolved factual allegations which, if true, might support [petitioner's] constitutional claim . . . ."  [Dkt. No. 1-2 at 34 (citing 28 U.S.C. § 2255); *see also id.* at 17 (citing *United States v. Briggs*, 939 F.2d 222, 228 (5th Cir. 1991))].   He further argues having made "specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case."  [Dkt. No. 1-2 at 17].   Second, Quintanilla claims that his due process rights were violated because the Court allegedly failed to honor his request for the transcripts of his plea allocution and sentencing hearings.  [Dkt. No. 1 at 5].   Finally, Quintanilla argues that "the appeal waiver provision of [his] plea agreement [do] not prevent the district Court from reaching on the merits of the claims set forth herein."  [Dkt. Nos. 1 at 4, 1-2 at 31-33].

## II.   DISCUSSION

### A.    Standard for Relief under 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Vaugh*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)).  Generally, § 2255 allows relief in four areas: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to

collateral attack.  28 U.S.C. § 2255.  Upon the filing of such a petition, the sentencing court must order a hearing to determine the issues and findings of fact "[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  *Id.*  The court will construe Quintanilla's claims under a liberal construction.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B.    Waiver of Right to Appeal and Collateral Attack

Quintanilla has alleged numerous wrongs of constitutional proportion.  However, the Court must first determine whether discussion of such allegations is pretermitted by Quintanilla's waiver of his right to collaterally attack his conviction and sentence.  Quintanilla argues that the appeal waiver provision of his plea agreement does not prevent the Court from reaching and ruling on the merits of his claims.  The Court disagrees.

It is well-established that a defendant may waive the right to appeal and collaterally attack a conviction and sentence, so long as the waiver is both knowing and voluntary.  *See, e.g.*, *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) ("We apply normal principles of contract interpretation when construing plea agreements."); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Robinson*, 187 F.3d 516, 517-18 (5th Cir. 1999); *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997).  A court must first determine whether the waiver was knowing and voluntary, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement."  *Bond*, 414 F.3d at 544.  A district court may examine the validity of a waiver when a defendant files a motion to collaterally attack his conviction or sentence.  *See United States v. Boyd*, No. 3:06-cv-1365-H, 2007 WL 900949, at *3 (N.D. Tex. Mar. 23, 2007); *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992) ("We think that a defendant's waiver of

her right to appeal deserves and, indeed, requires the special attention of the district court.").  In limited circumstances, a defendant may plead around a waiver and claim ineffective assistance of counsel if he alleges that the waiver itself was tainted by counsel's ineffective assistance.  *White*, 307 F.3d at 339-43.

It is apparent to the Court that, despite his conclusory allegations to the contrary, Quintanilla knowingly and voluntarily waived his right to collaterally attack his conviction and sentence.  Courts must be careful not to accept a plea of guilty unless made voluntarily after proper advice and with full understanding of the consequences.  *See* Fed. R. Crim. P. 11; *United States v. Vonn*, 535 U.S. 55, 80 (2002) (citing *Kercheval v. United States*, 274 U.S. 220, 223 (1927)).  The Fifth Circuit notes that Rule 11 admonishments provide "prophylactic protection for the constitutional rights involved in the entry of guilty pleas."  *United States v. Garcia*, 983 F.2d 625, 627 (5th Cir. 1993).  Moreover, the requirement that a waiver be knowing and voluntary is not a requirement that a court ensure that the defendant's knowledge is perfect; rather, a court "must only ascertain whether the defendant has a realistic or reasonable understanding of his plea."  *Boyd*, 2007 WL 900949 at *4 (citing *United States v. Ruiz*, 536 U.S. 622, 631 (2002); *Garcia*, 983 F.2d at 627-28).  The Court discussed the terms of Quintanilla's waiver with him in detail.  Nothing in the record indicates that he expressed doubt or confusion as to the consequences of his waiver.  In fact, when the Magistrate Judge asked Quintanilla whether he had understood everything that she had explained to him, he answered "yes" while under oath.  Additionally, the plea agreement contains his signature, [Cr. Dkt. No. 22 at 7], further corroborating that he entered into this agreement voluntarily and knowingly.

As the well-reasoned opinion of the district court in *Boyd* explains, mere averments of an unknowing or involuntary waiver in a habeas corpus petition may not be sufficient to overcome

the presumptions of regularity and truthfulness which inhere in official documents such as plea agreements, official records, and proceedings in open court—such as plea hearings. *See* 2007 WL 900949 at *6 (discussing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974)). Quintanilla has presented nothing which would tend to undermine these well-established presumptions. Rather, he mererly argues that despite his waiver of appeal, he is still entitled to appellate review. [Dkt. No. 1-2 at 31]. In support of his position, Quintanilla cites to *United States v. Henderson*, 72 F.3d 463 (5th Cir. 1995), and to cases in other Circuits to point out that a waiver may be invalidated if a sentence is imposed in excess of the maximum penalty provided by statute or if based on a constitutionally impermissible factor such as race. [Dkt. No. 1-2 at 31]. However, neither of these situations applies to the case at hand. Furthermore, *Henderson* involves a motion to withdraw a plea, an issue that is not before this Court. Moreover, Quintanilla fails to provide any authority in this Circuit to support his claim.

Therefore, based upon its thorough review of the Rule 11 hearing and Quintanilla's signed plea agreement, the Court concludes that Quintanilla knowingly and voluntarily waived his right to appeal and to collaterally attack his sentence and conviction. *See Bond*, 414 F.3d at 544. The Court next concludes that the terms of Quintanilla's plea agreement extend to the current petition. *See id.* In no uncertain terms, Quintanilla validly agreed not to file a petition pursuant to 28 U.S.C. § 2255. The only other ground for attacking his conviction is ineffective assistance of counsel in connection with the filing of an appeal. The Court will briefly address Quintanilla's ineffective assistance of counsel claim to explain why an evidentiary hearing is warranted only as to the notice of appeal issue.

## C.    Ineffective Assistance of Counsel

### 1.    Standard

Ineffective assistance constitutes a violation of the Sixth Amendment right to counsel, a claim permitted under § 2255.  To prove ineffective assistance, the petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In assessing deficient performance, a court indulges a strong presumption that counsel's conduct fell within the wide range of reasonable assistance.  *Id.* at 689.  Under the prejudice requirement, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different.  *Id.* at 694; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1992) (requiring that a defendant show that counsel's errors deprived the accused of a substantive or procedural right, thereby rendering the trial proceedings unfair or the result unreliable).  A "reasonable probability" is a probability which undermines confidence in the outcome.  *Id.*  In the sentencing context, a petitioner must show that a reasonable probability exists that, but for counsel's errors, the petitioner's sentence would have been "*significantly* less harsh."  *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993) (per curiam) (emphasis in original).

### 2.    Failure to Pursue Appeal

Quintanilla argues that after the sentencing hearing, he asked Mr. Sosa to submit a Notice of Appeal, "but instead Sosa vanished and no longer accepted [his or his family's] telephone calls," thereby depriving him of his right to appeal his conviction and sentence.  [*Id.* at 6].  The Court determines that Quintanilla has alleged ineffective assistance of counsel due to deprivation of his right to appeal.  Thus, an evidentiary hearing will be held to determine whether Quintanilla requested that his attorney file a notice of appeal.

An attorney's failure to file a notice of appeal requested by a defendant is *per se* ineffective assistance of counsel, even without a showing that the appeal would have had merit. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  Regarding the first *Strickland* prong, if the attorney knows that the defendant wishes to appeal, he must perform the ministerial task of filing the notice of appeal, or his performance will be deemed to be objectionably unreasonable.  *Id.*  In broader terms, any act which constructively denies the defendant his right to appeal altogether will be deemed unreasonable.  *Id.* 483.  Regarding the second *Strickland* prong, the defendant shows prejudice if he "demonstrate[s] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Id.* at 484.  This rule applies even where a defendant has waived his right to direct appeal and collateral review.  *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).  "[I]f the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver."  *Id.*

Because Quintanilla avers that his attorney thwarted his efforts to appeal, he has alleged both unreasonable performance and prejudice as required under *Strickland*.  *See Flores-Ortega*, 528 U.S. at 483-86; *Tapp*, 491 F.3d at 265-66.  Thus, the Court believes that an evidentiary hearing is required.  If Quintanilla is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and Quintanilla will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious ground for appeal that would not be precluded by the terms of his appeal waiver.  *Id.*  As such, the Court

will hold an evidentiary hearing, but only for the limited purpose of determining whether Quintanilla asked his attorney to file a notice of appeal.

**D.      Deprivation of Hearings' Transcripts in Violation of Quintanilla's Due Process Rights**

Quintanilla next argues that his due process rights were violated because he was not provided with the transcripts that he requested from the court reporters to prepare for this petition.  [Dkt. No. 1 at 5].  Section 2255 does not allow relief under this type of claim.  Even if it did, because the terms of his plea agreement extend to the instant petition, this claim is similarly precluded from review.

## III.      CONCLUSION

Upon reviewing Quintanilla's petition, the Court believes that an evidentiary hearing is required.  However, such a hearing will be held for the limited purpose of determining whether Quintanilla requested that his attorney file a notice of appeal.  Accordingly, the United States Marshal is **ORDERED** to produce before the Court Petitioner Raul Quintanilla, register number 71324-179, on August 4 at 9:00 a.m.  It is further **ORDERED** that the following parties appear on the same date and time for a hearing on Quintanilla's cause:  (1) the United States Attorney; (2) counsel for Quintanilla: and (3) Attorney Fausto Sosa.

IT IS SO ORDERED.

DONE this 4th day of June, 2008, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

To Insure Proper Notice, Each Party Who Receives This Order Shall Forward a Copy of it to Every Other Party And Affected Non-party Even Though They May Have Been Sent One by The Court.